# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

MARQUICE ROBINSON,

*Plaintiff-Appellant,*

*v.*

THE UNITED STATES MARSHALS SERVICE, ET AL.,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:17-CV-03658-WMR

## BRIEF OF APPELLEE
## THE UNITED STATES MARSHALS SERVICE

KURT R. ERSKINE
   *United States Attorney*

TIFFANY R. DILLINGHAM
   *Assistant United States Attorney*

LISA D. COOPER
   *Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

The Appellee agrees that the Certificate of Interested Persons and Corporate Disclosure Statement included with Appellant's brief is a complete list of all people and entities known to have an interest in the outcome of this appeal.

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
Statement.................................................................C-1

Statement Regarding Oral Argument ............................... i

Table of Contents........................................................... ii

Table of Citations.........................................................iv

Statement of Jurisdiction..............................................vii

Statement of the Issues ................................................. 1

Statement of the Case................................................... 3

    A. Course of Proceedings and Disposition Below.................... 3

        1. Course of Proceedings..................................... 3

        2. District Court Decision .................................... 5

    B. Statement of the Facts ......................................... 7

        1. The USMS Contract with Akal ...................... 8

        2. Robinson's Employment and Misconduct ..................... 9

        3. USMS's Response to the August 19 Incident .............. 11

    C. Standard of Review ............................................. 15

Summary of the Argument.............................................. 16

Argument and Citations of Authority ........................... 17

1. USMS Was Not Robinson's Joint Employer. ........................ 17

    A. USMS did not co-determine the essential terms of
Robinson's employment. ...................................... 17

    B. Robinson's arguments rest on inapplicable out-of-circuit
cases based on collective bargaining agreements. .............. 20

2. Robinson Failed to Establish a *Prima Facie* Case of
   Retaliation. ............................................................... 23

   A. Robinson's allegations of false declarations do not
      demonstrate that USMS's decision was tainted by
      discrimination. ................................................... 24

   B. The June 22, 2016 email and an admission from Holman
      do not show USMS's decision was tainted by
      discrimination. ................................................... 26

3. The District Court Properly Denied Robinson's Motions
   for Reconsideration. ................................................. 28

4. The District Court Properly Denied Robinson's Motion for
   Sanctions for Spoliation. .......................................... 31

Conclusion. ................................................................. 34

Certificate of Compliance With Type-Volume Limit, Typeface
Requirements, and Type-Style Requirements. ............... 35

Certificate of Service. .................................................. 36

# TABLE OF CITATIONS

**Federal Cases**

*Atterbury v. United States Marshals Service,*
941 F.3d 56 (2d Cir. 2019)................................6, 20, 21, 22

*Babb v. Sec'y, Dep't of Veterans Affairs,*
992 F.3d 1193 (11th Cir. 2021)........................23, 24, 26

*\*Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs,*
616 F. App'x 899 (11th Cir. 2015) ................................. 25

*Chapman v. AI Transport,*
229 F.3d 1012 (11th Cir. 2000) (en banc)..................... 15

*Corwin v. Walt Disney Co.,*
475 F.3d 1239 (11th Cir. 2007)...................................... 29

*Crawford v. Metropolitan Gov't of Nashville & Davison Cnty.,*
555 U.S. 271 (2009) ...................................................... 23

*Eli Lilly and Co. v. Air. Exp. Intern. USA, Inc.,*
615 F.3d 1305 (11th Cir. 2010)................................ 31, 32

*Flury v. Daimler Chrysler Corp.,*
427 F.3d 939 (11th Cir. 2005)....................................... 15

*Harris v. Chapman,*
97 F.3d 499 (11th Cir. 1996)......................................... 31

*\*Malone v. U.S. Attorney General,*
858 F. App'x 296 (11th Cir. 2021) ................................ 23

*Mann v. Taser Intern., Inc.,*
588 F.3d 1291 (11th Cir. 2009)..................................... 32

\*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*McDonnell Douglas v. Green*,

    411 U.S. 792 (1973) ........................................................... 24

*Morrison v. Magic Carpet Aviation*,

    383 F.3d 1253 (11th Cir. 2004) ....................................17, 18, 19, 20

*Parker v. Esper*,

    856 F. App'x 807 (11th Cir. 2021) .......................................... 17, 18

*Peppers v. Cobb County*,

    835 F.3d 1289 (11th Cir. 2016) .............................................. 17, 19

*Richardson v. Johnson*,

    598 F.3d 734 (11th Cir. 2010) ................................................ 15, 29

*Smith v. Collins*,

    230 F. App'x 869 (11th Cir. 2007) .......................................... 20, 25

*Strolberg v. United States Marshals Service*,

    350 F. App'x 113 (9th Cir. 2009) ............................................ 21, 22

*Tesoriero v. Carnival Corp.*,

    965 F.3d 1170 (11th Cir. 2020) ............................................... 32, 33

*United States v. Al-Arian*,

    514 F.3d 1184 (11th Cir. 2008) ..................................................... 15

*United States v. Harris*,

    608 F.3d 1222 (11th Cir. 2010) ..................................................... 15

*Williams v. Geithner*,

    327 F. App'x 175 (11th Cir. 2009) .......................................... 28, 29

**Federal Statutes**

28 U.S.C. § 561 ........................................................................... 8

28 U.S.C. § 566 ........................................................................... 8

28 U.S.C. § 1291 ....................................................................... viii

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

28 U.S.C. § 1331 ............................................................ vii, 4

28 U.S.C. § 1367(a) ............................................................. 4

Title VII of the Civil Rights Act of 1964 .................................... passim

**Federal Rules**

Fed. R. App. P. 4(b)(1)(B) ................................................... viii

Fed. R. App. P. 25 ............................................................ 36

Fed. R. App. P. 32(a)(5)(A) .................................................. 35

Fed. R. App. P. 32(a)(6) ...................................................... 35

Fed. R. App. P. 32(a)(7)(B)(i) ................................................ 35

Fed. R. App. P. 32(f) ......................................................... 35

Fed. R. Civ. P. 54(b) .................................................... vii, viii

Fed. R. Civ. P. 59(e) ......................................................... 28

Fed. R. Civ. P. 60(b) ......................................................... 28

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

**MARQUICE ROBINSON,**

*Plaintiff-Appellant,*

*v.*

**THE UNITED STATES MARSHALS SERVICE, ET AL.,**

*Defendants-Appellees.*

---

## STATEMENT OF JURISDICTION

(A) The district court had subject matter jurisdiction over the underlying case based on 28 U.S.C. § 1331.

(B) On February 3, 2021, the Court issued jurisdictional questions regarding whether the district court's grant of a Rule 54(b) certification was proper. On May 12, 2021, after briefing was submitted by the parties, the Court ordered that the issues identified in the jurisdictional questions are carried with the case. The United States Marshals Service incorporates its February 17, 2021 briefing herein regarding the jurisdictional questions. In the event the Court determines that the district court's grant of a Rule 54(b) certification was proper, this Court has jurisdiction over this

direct appeal from the judgment of the district court under 28 U.S.C. § 1291.

(C) Appellant Marquice Robinson's first notice of appeal in appeal number 20-11574 was timely filed on April 20, 2020, within 60 days of the entry of the district court's summary judgment order on March 20, 2020. Fed. R. App. P. 4(b)(1)(B).

(D) This appeal is not from a final order and judgment that disposes of all the parties' claims in this civil case. The Court only has jurisdiction if it finds that the district court's Rule 54(b) certification was properly granted.

# STATEMENT OF THE ISSUES

1. As a threshold matter, a party cannot be liable for employment discrimination or retaliation under Title VII of the Civil Rights Act of 1964 if it is not the plaintiff's employer. It is undisputed that the United States Marshals Service ("USMS") did not compensate, provide benefits to, or train Robinson, did not schedule, supervise, or dictate Robinson's daily activities, and did not have authority to hire or fire Robinson from Akal's employment. Did the district court properly enter summary judgment in favor of the USMS where Robinson failed to raise genuine issues of fact to demonstrate USMS was his joint employer?

2. To establish the causation element necessary for a *prima facie* case of retaliation, Robinson must show that discrimination motivated USMS's decision to remove him from the CSO contract. Although USMS was aware of Robinson's EEO activity, there is no evidence that this knowledge played any role in USMS's decision or was close in time to the decision. Did the district court correctly find that the Robinson failed to establish a causal link between his protected activity and his removal from the CSO contract?

3. Did the district court properly deny Robinson's two motions for reconsideration where he failed to point to any newly discovered evidence, clear errors of fact or law, or changes in the controlling law?

4. Did the district court properly deny Robinson's second motion for sanctions where he failed to show that the allegedly spoliated evidence ever existed, or that it was destroyed in bad faith and prejudiced his case?

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below[1]

#### 1. Course of Proceedings

Marquice Robinson is a former court security officer who worked in the Richard B. Russell Federal Courthouse in Atlanta, Georgia. On August 17, 2017, Robinson filed a complaint in the Superior Court of Fulton County, Georgia, against his former employer, Akal Security, Inc., the United States Marshals Service, and his former supervisor, Michael Holman. [Doc. 1-1].[2] The complaint alleged retaliation in violation of Title VII of the Civil Rights Act, intentional infliction of emotional distress, defamation, false light invasion of privacy, battery, assault, and sought attorney's fees. *Id.* On September 20, 2017, Akal

---

[1] While there are numerous pleadings and motions addressed in Robinson's appeal, USMS addresses only those pleadings, motions, and orders that pertain to claims made against USMS.

[2] Robinson's appendix appears to contain significantly modified versions of the documents filed on the district court docket, which change the original content and page numbers. So that the Court is referencing the original unmodified version of the documents filed below, USMS cites directly to the docket entries from the district court record and does not cite to Robinson's appendix. In the event the Court prefers that USMS file a supplemental appendix, USMS will do so.

and Holman filed a timely Notice of Removal to federal district court pursuant to 28 U.S.C. §§ 1331 and 1367(a). *Id.*

On July 2, 2018, after successfully seeking leave to file an amended complaint, Robinson filed his First Amended Complaint which added allegations regarding the basis of Robinson's EEO complaint – specifically, that Robinson believed his employer discriminated against him because of his "perceived failure or refusal to conform to the male gender stereotype." [Doc. 32.] USMS filed its Answer to the Amended Complaint on July 16, 2018. [Doc. 34.] Akal and Holman filed their Answer to the Amended Complaint on November 29, 2018 after the Court denied their motion to dismiss. [Doc. 57.] Thereafter, an extended discovery period commenced.

On May 2, 2019, Robinson filed a Motion for Sanctions against Akal and Holman alleging that video footage, an audio recording, and interview statements from various witnesses were not preserved or were otherwise spoliated. [Doc. 97.] Robinson's motion for sanctions contained no allegations against USMS. *Id.* The Magistrate Judge deferred the motion for sanctions to the district court on May 7, 2019. [Doc. 99.]

On September 20, 2019, each defendant filed motions for summary judgment. [Docs. 162-1, 163-1.] As to the sole claim of Title VII retaliation against USMS, USMS argued that Robinson could not

establish the threshold issue that USMS was his employer for purposes of Title VII. [Doc. 163-1.] And, even if USMS was determined to be Robinson's employer, Robinson failed to establish a causal link between his termination and his EEO activity, and USMS had a legitimate non-pretextual reason to request his removal from the CSO contract. *Id.* On October 24, 2019, Robinson filed "cross-motions" for summary judgment against all defendants arguing that summary judgment should be entered in his favor because the defendants had "engaged in witness tampering" and because he had filed "formal complaints against several Akal and USMS personnel," and therefore, his "case has been prejudiced." [Doc. 188, 189.]

### 2. District Court Decision

On February 4, 2020, the magistrate judge issued a Report and Recommendation ("R&R") recommending that USMS's and Akal/Holman's motions for summary judgment be granted, that Robinson's cross-motion for summary judgment be denied, and again deferring Robinson's motion for spoliation sanctions against Akal to the district court. [Doc. 214.] As to USMS, the magistrate judge found that the "record establishes that USMS was not Plaintiff's joint employer" because USMS provided no compensation or benefits to Robinson, was not responsible for day-to-day scheduling or supervising Robinson, and had no ability to hire or fire CSOs. [Doc. 214 at 60-61.]

And, even if Robinson could establish that USMS was his joint employer, Robinson could not establish a *prima facie* case of retaliation for two reasons: (1) there was no temporal proximity between Robinson's EEOC charge and his removal from the CSO contract; and (2) there was no direct evidence of retaliation. [Doc. 214 at 62-65.]

On February 13, 2020, Robinson filed objections to the R&R, arguing in part that he "can satisfy the third element [of retaliation] merely by presenting evidence that the protected activity and the subsequent adverse employment action are not totally unrelated." [Doc. 222 at 18.] Robinson also argued that the magistrate judge failed to consider *Atterbury v. United States Marshals Service*, 941 F.3d 56 (2d Cir. 2019) when determining whether USMS was a joint employer for purposes of his Title VII retaliation claim. [Doc. 222 at 21.] On February 25, 2020, USMS filed a reply to Robinson's objections. [Doc. 225.]

On March 20, 2020, the district court issued an omnibus order adopting the findings and conclusions of the magistrate judge and denying without prejudice Robinson's motion for spoliation against Akal because Akal "is no longer in the case." [Doc. 228.] Specifically, the district court found that Robinson's reliance on *Atterbury* was misplaced because the case "does not contain any analysis of the joint employer issue and does not make any finding that the United States

Marshals Service was a joint employer." [Doc. 228 at 10] The district court also found that Robinson's purported direct evidence of retaliation (i.e. a June 22, 2016 email from James Tassone) did not "suggest that Defendants changed Plaintiff's work-schedule because of the EEO complaint. Instead, it shows that Defendants did not want to take any action against Plaintiff that could be considered retaliatory." [Doc. 228 at 9.]

On March 26, 2020, Robinson filed a motion for reconsideration of the district court's March 20, 2020 omnibus order arguing, among other things, that his motion for spoliation should have been ruled on before the motions for summary judgment, that his FOIA requests and complaints to DOJ OIG were newly discovered evidence, and that USMS's pandemic-related emergency guidance was evidence that USMS was his joint employer. [Doc. 231-2.] That same day, Robinson renewed his motion for spoliation sanctions, this time adding the allegation that USMS also failed to preserve videos and "concurrence letters" relating to his removal from the CSO contract. [Doc. 232-1.] On April 14, 2020, the district court denied Robinson's motion for reconsideration and renewed motion for sanctions. [Doc. 239.]

## B. Statement of the Facts

USMS has the primary role and mission to provide for judicial security, including ensuring the safety of all federal courts and

employees and securing all buildings that house the judiciary. 28 U.S.C. §§ 561, 566. This employment discrimination case arises from USMS's efforts to eliminate workplace disruption that threatened its ability to achieve its mission.

### 1. The USMS Contract with Akal

Under its Court Security Officer ("CSO") Program, USMS enters contracts with private security companies to provide armed security guard services to federal judiciary court facilities. [Doc. 163-3 at ¶4]. In the Eleventh Circuit, USMS has contracted with Akal Security, Inc. ("Akal") for such armed security guard services, and that contract includes the Richard B. Russell federal building. [*Id.* at ¶5]. Under its contract with Akal (hereinafter, the "USMS Contract"), Akal provides all management, supervision, training, and administrative support to perform court security services for the USMS. [*Id.* at Exhibit 1 (Contract) § C.2]. The CSOs employed by Akal are not USMS employees and receive no form of compensation or benefits from USMS. [*Id.* at ¶9.]

Under the Contract, Akal has a selection process for ensuring that CSO candidates meet minimum qualifications and ensuring all CSO positions are filled in a timely manner. [*Id.* at ¶10]. Akal must provide training to all CSOs, including weapons training, on-the-job training, annual training, and remedial training. [*Id.* at Ex. 1 at § C.12.] Akal is

responsible for scheduling and supervising the daily activities of the CSOs, and CSOs are required to direct all questions about their duties and job performance to Akal and not to USMS. [*Id.* at ¶10.] Although USMS retains the right to determine the suitability of any CSO to serve under the contract and to direct the removal of a CSO from the contract, USMS does not have authority to hire or fire CSOs from Akal's employment. [*Id.* at ¶11.]

The Contract also provides that CSOs must meet certain performance standards of "competency, conduct, appearance, and integrity." [*Id.*, Ex. 1 at § C.14.1.] Akal is responsible for disciplining CSOs that violate performance standards and for reporting instances of CSO criminal activity, fraud, misconduct, insubordination, or dereliction of duty to the Northern District of Georgia's Contracting Officer's Representative. *Id.* Once USMS is notified of a Performance Standard Violation ("PSV"), USMS may request that Akal conduct an investigation of the PSV. [*Id.* at § H.10.] Akal must then provide an investigative report to USMS and recommend discipline for the CSO if a violation is found to have occurred. *Id.* If USMS does not agree, it may request that Akal reconsider its proposed remedy. *Id.*

### 2. Robinson's Employment and Misconduct

In 2016, Marquice Robinson and Michael O'Donnell were both employed by Akal as CSOs assigned to the Richard B. Russell federal

building. [*Id.* at ¶8.] On August 17, 2016, Robinson was scheduled to work at the loading dock from 8:00 a.m. to 3:15 p.m. [Doc. 160 at 75:14-17, 118:14-23, Ex. 1 (000137).] He did not arrive to his post until 8:10 a.m. [*Id.* at 21:20-25]. On August 19, 2016, Akal District Supervisor (DS) Thomas Shell and Akal Lead CSO (LCSO) Michael Holman asked Robinson to report to Shell's office in an attempt to meet with Robinson to discuss his tardiness in reporting to his post. [Doc. 163-3 at ¶13; Doc. 160 at 76:3-7.] CSOs are not permitted to use their personal cell phones while on duty. [Doc. 163-3 at Ex. 1 at §§ C.14.2.33 and C.14.2.34; Doc. 160 at 79:21-24.] Despite this, prior to arriving to DS Shell's office, Robinson called O'Donnell intending for O'Donnell to serve as his witness during the meeting. [Doc. 160 at 78:20-80:14.] O'Donnell was assigned to the Plaza Level of the Richard B. Russell building at the time. [Doc. 158 at 147:17-149:25.] Robinson left his Bluetooth in his ear as he reported to DS Shell's office so that O'Donnell could hear the conversation with his supervisors. [Doc. 160 at 79:25-81:14.]

When DS Shell and LSCO Holman attempted to counsel Robinson about his tardiness to post, Robinson complained that DS Shell and LSCO Holman were harassing him and attempted to leave. [*Id.* at 83:14-84:2, 94:10-95:5.] Robinson admitted he spoke in a loud voice and refused to close the door when asked. [*Id.* at 82:16-83:6, 93:23-

95:5.] According to DS Shell and LSCO Holman, Robinson was aggressive, made threats like "you don't want any of this," and had to be physically restrained by other CSOs. [*Id.* at Ex. 2 (000187-000201); Doc. 163-3 at ¶¶13, 19.] Hearing the yelling over the phone, O'Donnell left his post on the Plaza Level to intervene, grabbed LSCO Holman by the shoulder and collar, and also had to be restrained by other CSOs. [Doc. 158 at 168:11-170:4.] After the incident, both Robinson and O'Donnell left work before the end of their shifts. [*Id.* at 159:8-15; Doc. 160 at 96:8-13.]

### 3. USMS's Response to the August 19 Incident

After the incident, DS Shell and LCSO Holman notified USMS Assistant Chief Hall that during an attempted counseling session regarding Robinson's tardiness to his post, Robinson and O'Donnell became violent and lost control. [Doc. 163-3 at ¶13.] Assistant Chief Hall, in turn, notified USMS Chief Anderson, United States Marshal Beverly Harvard, and Judicial Security Inspectors (JSI) LeeAnne Rucker-Reed and John Devenney about the incident. [*Id.* at ¶14.] On August 22, 2016, due to the serious nature of Robinson's and O'Donnell's behavior, Assistant Chief Hall sent an email request to the USMS Assistant Chief of the Office of Court Security, Phillip Cornelious, requesting that both CSOs be temporarily removed from performing under the USMS Contract pending the outcome of Akal's investigation

of the August 19, 2016 incident. [*Id.* at ¶15, Ex. 2.] Assistant Chief Cornelious was the USMS official who determined the agency's response to CSO misconduct, including USMS's decisions as to Robinson and O'Donnell. [Doc. 163-4 at ¶4.]

Consistent with her duties as the District Contracting Officer's Representative, on August 23, 2016, JSI Rucker-Reed submitted two PSV reports to the USMS Contracting Officer, reporting the misconduct by O'Donnell and Robinson. [Doc. 163-3 at ¶¶16-17, Ex. 3.] Upon review of the allegations against Robinson and O'Donnell, Assistant Chief Cornelious agreed with Assistant Chief Hall's recommendation and directed a Contracting Officer to notify Akal to conduct an investigation into the matter and remove both CSOs from the contract during the investigation. [Doc. 163-4 at ¶8, Ex. 3.] On October 1, 2016, Akal provided its reports of investigation regarding O'Donnell and Robinson to the USMS Office of Court Security along with letters containing Akal's recommendation that both CSOs be suspended for their misconduct. [*Id.* at ¶¶9-10, Ex. 4; Doc. 160 at Exs. 1 and 2.]

On October 4, 2016, the USMS Office of Court Security emailed Akal's investigative report and letters to USMS leadership in the District and requested a determination of whether the District concurred with Akal's recommendation that Robinson and O'Donnell

be suspended for their conduct. [Doc. 163-4 at ¶11, Ex. 5.] Assistant Chief Hall, Chief Anderson, JSI Devenney, and JSI Rucker-Reed discussed Akal's investigative reports and discipline recommendations, and all agreed that suspension of O'Donnell and Robinson was not appropriate. [Doc. 163-3 at ¶20-21; Doc. 163-5 at ¶8-9.] Instead, the District believed that both CSOs' conduct, as reflected in Akal's investigative report, warranted their removal from further service under the USMS Contract. [Doc. 163-3 at ¶22; Doc. 163-5 at ¶10.] Specifically, regarding Robinson, the District concluded, in part:

> Such behavior by an individual in an armed security guard position creates an inherently dangerous environment, and cannot be tolerated by the agency responsible for the security of the building and the safety of its occupants. It is the opinion of the N/GA that CSO Robinson's behavior creates an unacceptable risk to the safety and security of the building. His actions display an inability to understand and appreciate the duties and responsibilities of a CSO, and he is unable to properly perform his duties under the CSO contract.

[Doc. 163-3 at Ex. 6.] On October 13, 2016, Assistant Chief Hall sent Assistant Chief Cornelious a memorandum outlining the District's position that it did not agree with Akal's proposed suspension. [*Id.* at ¶23, Ex. 6.]

Assistant Chief Cornelious agreed with the reasons set forth by the District, decided that a suspension was insufficient, and that Akal

should be directed to reconsider its position. [Doc. 163-4 at ¶14.] Consistent with Assistant Chief Cornelious' decision, on October 19, 2016, letters were sent from the Office of Court Security directing Akal to reconsider its recommendation that Robinson and O'Donnell only be suspended. [*Id.* at ¶16, Ex. 7.] Despite Akal's renewed recommendation that O'Donnell and Robinson only be suspended, both the District and Assistant Chief Cornelious disagreed and maintained that both CSOs should be permanently removed from performance under the USMS contract. [*Id.* at ¶¶16-18, Exs. 8 and 9; Doc. 163-5 at. ¶¶13-15; Doc. 163-3 at ¶24.] USMS notified Akal that it was directing the removal of Robinson and O'Donnell from performing under the USMS Contract on November 9, 2016. [Doc. 163-4 at ¶18, Ex. 9.] USMS did not direct Akal to terminate Robinson's employment. *Id.* Robinson admits that it was not surprising that USMS would not want him to continue to perform under the contract given the misconduct reported by Akal. [Doc. 160 at 134:16-135:11.]

During the District's discussions regarding the appropriate response to Robinson's conduct, District officials Hall, Anderson, Devenney, and Rucker-Reed never discussed Robinson's prior EEO complaints against Akal, nor were they motivated by Robinson's prior EEO activity. [Doc. 163-3 at ¶¶27-28; Doc. 163-5 at ¶¶16-17.] Similarly, none of Assistant Chief Cornelious's decisions regarding Robinson were

motivated by his EEO complaints against Akal, nor was Robinson's EEO activity discussed. [Doc. 163-4 at ¶¶24-25.] Nonetheless, on January 18, 2017, Robinson contacted the USMS EEO Office, and on March 2, 2017, he filed an EEOC Charge against USMS alleging that he was removed from the USMS contract in retaliation for his prior EEO activity against Akal. [Doc. 161 at 242:18-244:3, Ex. 20.]

### C. Standard of Review

This Court reviews de novo a district court's grant of summary judgment, applying the same standards as the district court. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). This Court reviews a district court's denial of a motion for spoliation sanctions and a motion for reconsideration for abuse of discretion. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943 (11th Cir. 2005); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010). This Court may also affirm the decisions of the district court for any reason supported by the record, even those that were not relied upon by the district court in rendering its decision. *See United States v. Harris*, 608 F.3d 1222, 1227 (11th Cir. 2010) (quoting *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008)).

# SUMMARY OF THE ARGUMENT

Akal Security terminated Marquice Robinson from his job as a court security officer because, when asked by his supervisors about his tardiness, he lost his temper and behaved badly. USMS's role in that termination was limited because USMS was not Robinson's employer. Instead, when USMS learned from Akal that Robinson, an armed court security officer, became belligerent and engaged in a physical altercation with his supervisor, USMS decided that, while Akal could choose to keep Robinson in its employ in another capacity, he could not serve under USMS's contract for security services in the federal courthouse. That decision by USMS was not motivated in any respect by Robinson's EEO activity. Because USMS was not his employer and its decision-making was not motivated by Robinson's EEO activity, the district court properly granted USMS summary judgment. Moreover, the district court properly rejected Robinson's unsubstantiated allegations of spoliation and perjured declarations, and this Court should affirm.

## ARGUMENT AND CITATIONS OF AUTHORITY

**1. USMS Was Not Robinson's Joint Employer.**

"Two entities are joint employers when they have contracted in good faith to 'co-determine' the essential terms of employment." *Parker v. Esper*, 856 F. App'x 807, 808 (11th Cir. 2021) (citing *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004)). To determine whether an entity is a joint employer, this Court considers "whether the employment took place on the alleged employer's premises, how much control the alleged employer asserted, and the extent to which the alleged employer had the power to modify employment conditions." *Id.* "The simple fact that a major client can pressure an employer into firing a particular individual does not transmute that client into that individual's employer." *Morrison*, 383 F.3d at 1255. If the entity does not predominantly control the terms of the employment relationship, it cannot be found to be liable as an employer under Title VII. *See Peppers v. Cobb County*, 835 F.3d 1289, 1301 (11th Cir. 2016).

### A. USMS did not co-determine the essential terms of Robinson's employment.

Here, the district court correctly determined that Robinson failed to show any genuine issues of material fact to establish USMS was his joint employer. *See Parker*, 856 F. App'x at 808 ("Where there are no genuine issues of material fact, a court may decide whether an entity is a joint

employer, in lieu of a jury"). First, Robinson introduced no evidence regarding whether his worksite at the Richard B. Russell Building Federal Courthouse "belonged to" the USMS such that it had "meaningful direct control over or in the worksite itself." *See Morrison*, 383 F.3d at 1255 (noting that while the alleged employer leased the worksite, it has no meaningful direct control over the worksite). The Richard B. Russell federal courthouse, one of numerous federal judiciary court facilities within the scope of Akal's contract in the Eleventh Circuit, houses several federal agencies, their employees, and contractors. And, there is no evidence in the record regarding the nature of USMS's presence in the federal courthouse.

Second, Robinson fails to identify any facts that demonstrate USMS's ability to exert control over his day-to-day employment. USMS did not set Robinson's schedule or work hours, nor did it assign his duties. *See Parker*, 856 F. App'x at 808 (even where federal entity occasionally assigned the plaintiff work duties, such indirect control was insufficient to establish an employment relationship because the contractor assigned "the bulk of his job responsibilities – including his schedule and work hours"). USMS did not compensate Robinson, nor did it provide any federal employee benefits, like insurance or retirement, to Robinson. USMS did not assign tasks to Robinson nor did it participate in hiring, training, or supervising Robinson. CSOs

were instructed to direct any questions about their employment, duties, or job performance to Akal, not USMS. And, the CSO Contract provided explicitly that Akal was responsible for providing "all necessary personnel, management, supervision, [and] administrative support [...] to perform court security services for the USMS." [Doc. 163-3 at 18.] Given Akal's contractual and actual control over the day-to-day employment of CSOs, Robinson cannot demonstrate that USMS exerted control over his employment. *See Peppers*, 835 F.3d at 1300-01 (where county had no involvement in hiring or supervising, even though it issued paychecks to the plaintiffs, it was not a joint employer).

Third, the record is clear that USMS did not have the ability to modify Robinson's employment conditions or "the power to hire or fire [Robinson] directly." *See Morrison*, 383 F.3d at 1255. In *Morrison*, the plaintiff was a pilot for Magic Carpet Aviation, and he performed under a contract between Magic Carpet and RDV Sports to fly players and staff of the Orlando Magic basketball team. *Id.* at 1254. Because RDV Sports was a "major client" of Magic Carpet that could "exert significant influence over its employment decisions," the plaintiff argued that RDV Sports was his joint employer for purposes of his FMLA claim. *Id.* at 1255. This Court disagreed, holding that RDV Sports' ability to pressure or influence an employer into firing a particular individual

"does not transmute that client into that individual's employer." *Id.* The same is true here. USMS did not have the power to terminate Robinson's employment with Akal. While USMS's decision to remove Robinson from eligibility to perform under its contract with Akal may have significant influence over Akal's decision to ultimately terminate Robinson's employment, that influence does not transform USMS into Robinson's employer. Therefore, there are no genuine issues of material fact that could show that USMS was Robinson's joint employer, and the district court properly granted USMS summary judgment on that basis.

## B. Robinson's arguments rest on inapplicable out-of-circuit cases based on collective bargaining agreements.

Robinson apparently abandons his arguments below that USMS exerted control over his employment or had the power to modify his employment terms. *See Smith v. Collins*, 230 F. App'x 869, 871 (11th Cir. 2007) (holding that *pro se* litigant failed to argue an issue in his brief and, therefore, it was deemed abandoned). Instead, Robinson argues that two out-of-circuit opinions (one a dissenting opinion) stand for the proposition that "governmental entities must treat unionized employees of a private contractor as public employees, which would make the USMS Appellant's joint employer." App. Br. at 51-53 (citing *Atterbury v. United States Marshals Service*, 941 F.3d 56 (2d Cir. 2019)

and *Strolberg v. United States Marshals Service*, 350 F. App'x 113 (9th Cir. 2009) (dissenting opinion)). This argument is unavailing.

First, Robinson lacks the key piece of evidence that controlled the *Atterbury* decision and *Strolberg* dissent: a collective bargaining agreement. There is no evidence of a collective bargaining agreement for CSOs employed by Akal at the time of Robinson's employment. Below, Robinson attempted to introduce an unauthenticated copy of a CBA which, by its own terms, expired before Robinson was employed as a CSO. The district court properly rejected the document as inadmissible evidence. [Doc. 214 at 57-58.] Therefore, there is no evidence in the record that Robinson can point to that is similar to the CBA terms relied on in either *Atterbury* or the dissent in *Strolberg*. And, a closer look at both opinions reveals that neither case contains a joint employer analysis.

In *Atterbury*, the plaintiff was a CSO who was terminated from his position after USMS was made aware of his misconduct. The similarities to this case end there. Atterbury filed suit alleging his due process rights were violated because USMS needed "just cause" to remove him. The Second Circuit's decision contains no analysis of whether USMS was Atterbury's joint employer, and Atterbury's claim under the Administrative Procedures Act turned on express "just cause" language in a collective bargaining agreement." 941 F.3d at 62-63. Here,

there is no evidence of an applicable collective bargaining agreement, nor is there any language in the CSO contract requiring "just cause" to terminate a CSO. *Atterbury* did not hold that the plaintiff had due process rights because USMS was his joint employer, and Robinson has not raised a due process claim here. Therefore, the district court correctly held that Robinson's "reliance on *Atterbury* is misplaced." [Doc. 228 at 11.]

The Ninth Circuit's decision in *Strolberg* is similarly unhelpful to Robinson. In *Strolberg*, CSOs who had been terminated due to medical qualifications sued the USMS arguing due process violations. The Ninth Circuit disagreed, holding that "when an 'employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right.'" 350 F. App'x at 114. This holding, again, turned on provisions in the applicable collective bargaining agreement – a piece of evidence that is unavailable to Robinson. And the dissent, relied on by Robinson, contains no analysis of the facts leading to the conclusion that USMS "exercises ultimate control over the terms and conditions" of CSO employment. *Id.* at 115. Therefore, aside from the unpersuasive nature of a dissenting opinion from another circuit, Robinson also fails to show how the *Strolberg* dissent's conclusory discussion of USMS's relationship with CSOs in the Ninth Circuit in 2009 bears any factual similarity to his case.

## 2. Robinson Failed to Establish a *Prima Facie* Case of Retaliation.

Even if Robinson could establish that USMS is his joint employer, he did not carry his burden to make out a *prima facie* case of retaliation. To make a *prima facie* case of retaliation and survive summary judgment, a plaintiff must show that: (1) he engaged in a protected activity or expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *See Malone v. U.S. Attorney General*, 858 F. App'x 296, 303 (11th Cir. 2021) (citing *Crawford v. Metropolitan Gov't of Nashville & Davison Cnty.*, 555 U.S. 271, 273 (2009)). To prove a causal link, a federal employee must show that discrimination "played a part in the way the decision was made" such that the adverse action was not "untainted by discrimination." *Malone*, 858 F. App'x at 301 (citing *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1199 (11th Cir. 2021) ("'discrimination,' as used in Title VII's federal-sector provision, by its own terms includes retaliation")).[3] Even considering this light burden

_____

[3] USMS assumes, for purposes of this argument, that this Court's recent decision in *Babb v. Sec'y, Dep't of Veterans Affairs*, would apply to Robinson's retaliation claim if this Court determined that USMS was a joint employer.

of proof, the district court correctly determined that Robinson failed to make out a *prima facie* case.[4]

### A. Robinson's allegations of false declarations do not demonstrate that USMS's decision was tainted by discrimination.

Robinson's brief fails to identify any evidence that USMS's August 23, 2016 decision to remove him from performing under the CSO contract was motivated in any way by his EEO activity. Instead, Robinson renews his accusations that USMS and Akal submitted "perjured declarations" and a "false statement" in support of their summary judgment motions to commit a "fraud on the court"– accusations that both this Court and the district court have rejected.[5] The substance of Robinson's argument is that USMS employees lied in their declarations when they denied *discussing* Robinson's EEO activity prior to the August 23, 2016 decision or thereafter. App. Br. at 22-26.

---

[4] This Court's decision in *Babb*, which held that the burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) should not be applied to Title VII claims brought by federal employees, was decided in April 2021, more than one year after the district court's summary judgment order in May 2020. Notably, while the R&R references the *McDonnell Douglas* framework, neither the magistrate nor the district court applied the burden-shifting analysis to Robinson's retaliation claim against USMS.

[5] On August 2, 2021, September 2, September 27, 2021, this Court denied motions filed by Robinson seeking to terminate his appeal in his favor and/or sanction USMS for the alleged fraud on the court.

Robinson points to an August 29, 2016 email forwarded to USMS employees in which he states he has "an active EEOC complaint." *Id.* Robinson concludes that these individuals must have discussed his EEO activity, despite the fact that they received his email *after* USMS had already decided to demand that Robinson no longer perform under the CSO contract.

Robinson's argument is meritless. It is undisputed that USMS officials were made aware of Robinson's EEO activity in an email from James Tassone on June 22, 2016, well before Robinson's email on August 29, 2016. There was never any dispute that USMS officials had *knowledge* of Robinson's EEO activity. But knowledge of Robinson's EEO activity alone does not establish that the EEO activity motivated or "tainted" any decision by USMS. *See Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 902 (11th Cir. 2015) (knowledge without an adverse action "very close" in time or "other evidence tending to show causation" is insufficient).[6] Robinson points to no evidence that USMS officials discussed his EEO activity, or that his

---

[6] Robinson does not challenge the district court's holding that he failed to show temporal proximity between his EEO activity and USMS's decision to remove him from performing under the contract. Robinson also does not challenge the district court's holding that his unauthenticated "comparator evidence" was inadmissible. Robinson, therefore, abandons these arguments for purposes of his appeal. *See Smith*, 230 F. App'x at 871.

EEO activity played any role in the decision to remove him from performing under the CSO contract.

## B. The June 22, 2016 email and an admission from Holman do not show USMS's decision was tainted by discrimination.

Robinson next argues that the district court wrongly viewed "the email communication that demonstrated that the Appellee's [sic] decision-makers were discussing [his] protected activity and wanted to transfer [him] to another work location." App. Br. at 47-48. Robinson argues that an email – which he never identifies, but presumably is the June 22, 2016 email from James Tassone – and the fact that Holman, Robinson's former Akal supervisor, admitted he had never had a discussion with Robinson about arriving by 8am, falls into a "convincing mosaic of circumstantial evidence" that USMS was motivated by Robinson's EEO activity. *Id.*

While it is unclear whether the "convincing mosaic" standard applies to retaliation claims by federal employees after *Babb,* neither the June 22, 2016 email nor Holman's admission that he did not have a conversation with Robinson are evidence that Robinson's EEO activity played any role in the decision to remove him from the CSO contract.

First, as the magistrate judge aptly stated in the R&R:

> Tassone's email does not even allow an inference of retaliatory intent by USMS. Tassone states that USMS employees wanted to transfer O'Donnell and Plaintiff to a sub-office due to their pushback regarding schedule changes (not due to any protected expression)

[Doc. 214 at 65.] The district court adopted this finding and further determined that "[n]othing in this email suggests that Defendants changed Plaintiff's work schedule because of the EEO complaint. Instead, it shows that Defendants did not want to take any action against Plaintiff that could be considered retaliatory." [Doc. 228 at 8.]

Robinson does not challenge the substantive merits of the district court's findings; he only challenges the district court's characterization of the email as direct rather than circumstantial evidence. This distinction does not matter. Regardless of how the evidence is characterized, the June 22, 2016 email does not show USMS's decision had anything to do with his EEO activity. At most, it shows that USMS wanted to take action against Robinson for an unrelated reason, but decided against it when Tassone notified USMS of Robinson's pending EEO complaint against Akal. That is not evidence that USMS changed its mind two months later and decided to take retaliatory action.[7]

---

[7] Robinson also argues that a February 2017 EEO report, which was prepared by an EEO counselor after Robinson filed an EEO complaint

Similarly, Robinson does not explain how Holman's admission that he never expressly told Robinson that he needed to report by 8am every day is evidence that USMS's decision was tainted by retaliation. Holman was not a USMS employee, and Robinson has not pointed to any case law or theory that would allow him to impute Holman's conduct to USMS. Moreover, Robinson fails to explain how the absence of a conversation is evidence of retaliatory intent. Thus, Robinson failed to meet his burden to show a causal link between his EEO activity and USMS's decision to remove him from the contract, and the district court properly granted summary judgment.

### 3. The District Court Properly Denied Robinson's Motions for Reconsideration.

Robinson argues that the district abused its discretion when it denied his two motions for reconsideration. This Court reviews the denial of a motion for reconsideration, "whether brought under Rule 59(e) or Rule 60(b), for an abuse of discretion." *Williams v. Geithner*,

---

against USMS, is evidence that USMS officials retaliated against him in August 2016 because the EEO counselor stated that USMS officials did not recall or know of his prior EEO activity. While the report itself is hearsay and inadmissible, the substance of Robinson's argument also fails. A second-hand record of whether USMS officials recalled that a terminated CSO had prior EEO activity several months after he was removed from the CSO contract is not evidence that those officials were motivated by that EEO activity when they acted in 2016.

327 F. App'x 175, 176 (11th Cir. 2009). It is well-settled that a motion for reconsideration cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010). And, where the record supports a grant of summary judgment, a district court does not abuse its discretion in denying a motion for reconsideration. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007).

Robinson argues first that the district court abused its discretion because it denied his first motion for reconsideration in "a one-page order giving no reason for the denial," failed to "make any findings of fact," and did not follow "proper procedures as it relates to issuing an order that explains why the motion was being denied." App. Br. at 24-25. Robinson fails to cite any precedent where this Court found a court abused its discretion by failing to provide a detailed order explaining the denial. Robinson also fails to identify any "proper procedures" that the district court violated by neglecting to provide Robinson a satisfactory explanation. The district court's April 14, 2020 order explained, however briefly, that the court considered the "motion[], the responses thereto, and all appropriate matters of record," and based on that review, denied the motion. [Doc. 239.] Nothing more is required.

Moreover, Robinson's first motion for reconsideration was used precisely in the way this Court forbids – it raised issues it could have raised before entry of judgment and failed to identify any new evidence, arguments, or a change in controlling law that would merit reconsideration. Therefore, the district court properly denied his first motion for reconsideration.

As for his second motion for reconsideration, Robinson notes that the district court provided an explanation, but that he disagrees with that explanation. Robinson argues that he "demonstrated that the district court's ruling on summary judgment was clear errors [sic] of law and material facts, and [he] provided newly discovered evidence." App. Br. at 26. In that motion, Robinson again accused USMS of submitting perjured declarations and, therefore, obtained summary judgment through fraud. [Doc. 273.] The district court correctly determined that Robinson raised or could have raised that issue prior to entry of judgment and otherwise "failed to demonstrate any of the bases for relief under Rule 60(b)." [Doc. 283.] Robinson does not explain how his repeated (and false) allegations of perjured declarations constitute newly discovered evidence, clear error of fact or law, or manifest injustice, and therefore, the district court did not abuse its discretion.

### 4. The District Court Properly Denied Robinson's Motion for Sanctions for Spoliation.

On May 2, 2019, during the discovery period in this case, Robinson filed a motion for sanctions due to spoliation of evidence accusing Akal of destroying or failing to preserve certain evidence. The district court denied that motion without prejudice in its omnibus order on March 20, 2020, finding that the issue was moot because Akal was no longer a party to the case. Robinson then filed another motion for sanctions on March 26, 2020, renewing his allegations against Akal, and adding allegations that USMS failed to preserve (1) video footage from the hallway outside of the office where the altercation with his supervisor occurred and (2) a letter he believed showed that USMS concurred with Akal's recommendation that he merely be suspended, not removed, from the contract. [Doc. 232]. Robinson raises arguments as to why the district court's denial of both motions was an abuse of discretion, but USMS limits its response to the second motion in which it was named.

"District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential." *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996). To prevail on a spoliation claim, "a party moving for sanctions must establish, among other things, that the destroyed evidence was relevant to a claim or defense such that the destruction of that evidence resulted in prejudice." *Eli Lilly and Co. v. Air. Exp. Intern. USA, Inc.*, 615 F.3d 1305,

1318 (11th Cir. 2010). And a party seeking sanctions must show more than mere negligence in losing or destroying records. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1183 (11th Cir. 2020) ("anticipation of litigation is not the standard for spoliation sanctions – bad faith is.").

Here, Robinson failed to show that either the video or the letter ever existed, or that if the video or letter were destroyed, that the evidence was destroyed in bad faith and prejudiced his case. Robinson believed a video from the hallway must have existed because he was aware of a camera in the hallway. Yet, Robinson produced no evidence that the camera was working or that a video was recorded on the day of the altercation. And, even if a video showed Robinson's version of what occurred, it did not prejudice his case – the district court construed the facts in Robinson's favor, and the altercation itself was not a basis for the district court's grant of summary judgment to USMS.

Similarly, Robinson's belief that USMS issued a concurrence letter before it issued its decision to remove Robinson from performing under the contract is baseless. Robinson's belief is based solely on the fact that USMS accidentally issued a concurrence letter for another employee involved in the altercation, and immediately rescinded that letter. USMS never issued a concurrence letter for Robinson, so it cannot be said that such a letter was destroyed. *See Tesoriero*, 965 F.3d

at 1184 (defining spoliation as "the destruction of evidence or the significant and meaningful alteration of a document or instrument"). And, even if the letter had existed, an intervening, accidentally-issued letter that ultimately was reversed does not demonstrate a retaliatory intent any more than the ultimate decision to remove Robinson shows retaliatory intent. Robinson, therefore, failed to state a spoliation claim, and the district court properly denied his second motion for sanctions against USMS.

## CONCLUSION

The United States respectfully requests that this Court affirm the decision of the district court.

Respectfully submitted,

KURT R. ERSKINE
  *United States Attorney*


/s/Tiffany R. Dillingham
TIFFANY R. DILLINGHAM
  *Assistant United States Attorney*


/s/Lisa D. Cooper
LISA D. COOPER
  *Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,026 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared by a proportionally spaced typeface using Microsoft Word 2016 word processing software in 14-point Goudy Old Style.

December 13, 2021

/s/Tiffany R. Dillingham
TIFFANY R. DILLINGHAM
*Assistant United States Attorney*

# CERTIFICATE OF SERVICE

This day the Appellee's Brief was filed and served using the Court's CM/ECF system, which automatically sends notification to parties and counsel of record. The listed pro se litigants, and attorneys who are exempt from electronic filing, were served this day by email, per agreement of the parties, at the listed address as set forth in Fed. R. App. P. 25:

Marquice Robinson
marquice_robinson@yahoo.com

December 13, 2021

*/s/Tiffany R. Dillingham*
Tiffany R. Dillingham
*Assistant United States Attorney*